IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NOBLE HALONA BEY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 1:24-cv-00259-RAH |
| ) | |
| CITY OF DOTHAN, ALABAMA, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the *Motion to Dismiss* filed by Defendants Allison Hall, Freddie L. White, II and the City of Dothan (collectively, the City) and a similar motion filed by Defendant Stephanie Wingfield. The issues have been fully briefed and are ripe for decision. The motions are due to be granted in part.

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, a court considers only the allegations contained in the complaint and any attached exhibits. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Id.* at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## BACKGROUND

Mama T's LLC is a limited liability company, owned by Noble Halona Bey AKA Latonya Dorsey, that operates a restaurant and food truck in Dothan, Alabama. In 2022, Bey decided to bid for a summer food service contract for local children that was being awarded by the City through a formal bidding process.

Because Bey was unfamiliar with the bidding process, Bey spoke with Stephanie Wingfield, who ran the food program for the City. Wingfield recommended that Bey speak with LaPortia Pierce about setting up a business plan and preparing the bid package. With Pierce's help, Bey submitted her bid on May 3, 2022. Bey's bid, as well as all other bids, were to remain under seal, and therefore confidential, until all bids were received and opened simultaneously.

Unbeknownst to Bey, Wingfield and Pierce shared Bey's confidential bid information with Tammie L. Potter, who also owned a restaurant and planned to bid for the same contract. Armed with Bey's confidential bid information, Potter was

2

able to undercut Bey's bid. Being the lowest bidder, Potter was awarded the summer feeding contract in May 2022.

Wingfield's conduct was discovered by officials with the City of Dothan, including Allison Hall, Freddie L. White, II, and Kevin Cowper, who then sought to terminate Wingfield's employment. Wingfield was terminated, but she was later rehired. According to Bey, city officials conducted the termination proceedings in such a manner that shielded Wingfield's conduct from the public and Bey. As such, Potter remained as the winning bidder.

Bey, and her business, Mama T's, then filed this suit on April 30, 2024, seeking lost income, stress and mental anguish. Bey does not seek, nor has she ever sought, to enjoin the food contract from being awarded to Potter or to have the contract bidding reopened. As such, this action is strictly one for monetary damages.

## DISCUSSION

In her Third Amended Complaint (TAC), the operative one, Bey brings a host of claims including state law claims for fraud-deceit, fraud-suppression, improper collusion under Alabama's antitrust laws, and intentional interference with business relations, and federal claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Sherman Antitrust Act, the Clayton Antitrust Act, and a Section 1983 claim advancing Fourteenth Amendment violations. The Defendants raise a host of arguments for dismissal of all of Bey's claims, largely focusing on the TAC's general failure to plead plausible claims. For purposes of the Defendants' motions to dismiss, the Court will address the federal claims only.

### A. RICO Claim

Under RICO, "a private plaintiff . . . must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland,*

*Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). As the Eleventh Circuit has noted, "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity[,]" including: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (citations omitted). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1317 (citation omitted); *see also Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015) (citation omitted) (stating that the Eleventh Circuit "has repeatedly held that lumping multiple defendants together in such generalities is insufficient under Rule 9(b)"). Therefore, if it does not, the claim must be dismissed.

In their motions to dismiss, the Defendants argue that Bey has not plausibly stated a RICO claim, placing particular emphasis on Bey's failure to plead with sufficient specificity an enterprise and a pattern of racketeering activity that included at last two predicate acts. The Court agrees that Bey's TAC falls far short on these issues.

### 1. RICO Enterprise Allegation

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). When the enterprise is a union or group of individuals associated in fact although not a legal entity, the enterprise must be "a group of persons associated together for a common purpose of engaging in a course of conduct." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

There are "three 'structural features': (1) 'a purpose', (2) 'relationships among those associated with the enterprise', and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Id.* "As a result, an associated-in-fact enterprise can be either 'formal' or 'informal,' as long as the enterprise's 'various associates function as a continuing unit.'" *Id.* at 1067–68 (quoting *Turkette*, 452 U.S. at 583).

Bey alleges an enterprise exists between Pierce on the one hand and the City Defendants (Wingfield, Hall, and White) on the other to achieve the common purpose of rigging the City's competitive bidding process against her and to award the contract to Potter. Bey's pleading of the enterprise is woefully deficient.

First, the RICO claim rests on the theory that a RICO enterprise existed between Pierce, a private citizen, and the City employees. However, Bey's entire theory rests upon the conclusory statement that Pierce acted "in concert" with the City employees. Under *Iqbal*, a plaintiff's conclusory allegations are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 680.

As the Defendants point out, the only other factual allegations contained in Bey's TAC regarding an enterprise relationship are pleaded in the same conclusory fashion. (*See* doc. 95 at 10–11, ¶¶ 44–46.) There, Bey alleges in a conclusory fashion that Pierce and the City employees—and the City of Dothan, by way of ratifying its employees' conduct—agreed to enter into an enterprise relationship with the common purpose of rigging the City of Dothan's Summer Feeding program for Potter's benefit. This does not plausibly allege a RICO enterprise, especially given that RICO is a certain breed of fraud and must be pled with an increased level of specificity. *See Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316–17; *see also Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010) (affirming the district

5

court's dismissal of a RICO conspiracy claim as the plaintiffs had "not plausibly alleged sufficient facts regarding [d]efendants['] agreement with other entities or persons to engage in the ongoing criminal conduct of an enterprise").

Second, one of the essential aspects of establishing a RICO associated-in-fact enterprise is the presence of a common purpose. *Cisneros*, 972 F.3d at 1211. In the TAC, Bey simply states that the common purpose was to rig the bidding process and to subsequently conceal that conduct.

This allegation does not rise beyond a level of speculative projection, let alone the heightened pleading standard required for a RICO claim. Even if the alleged common purpose was not pleaded in a conclusory fashion, which it is, it would not establish a common goal among all the Defendants. According to Bey, "the common purpose, of course, was to have Wingfield and Pierce's friend Potter win the contract." (Doc. 104 at 7.) Bey has offered no factual allegation linking Hall, White, or the City to Potter, nor does the TAC explain how awarding the contract to another vendor benefited these Defendants.

Notably, Bey fails to allege that the City employees received a financial benefit by awarding the contract to Potter. *See Ambrosia Coal & Constr. Co*, 482 F.3d 1309 (requiring plaintiffs to plead with specificity "what the defendants gained by the alleged fraud"). To the contrary, Bey states that Hall and White engaged in an after-the-fact cover-up of Wingfield's conduct by instituting attempts to fire Wingfield.

Taking the TAC at face value, "bid-rigging" and subsequent disciplinary proceedings against an employee have purposes far different in scope and time. And frankly, they demonstrate dissimilar objectives. Therefore, Bey fails to sufficiently plead a RICO enterprise.

### 2. RICO Pattern of Racketeering and Predicate Acts

Bey must also establish a pattern of racketeering. That is, plausibly allege, beyond generality, that: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir 2004) (emphasis omitted). Predicate acts under RICO are those that constitute "racketeering activity," which is "defined to include a number of state and federal offenses . . ." as set out by § 1961. *Holmes v. Security Investor Protection Corporation*, 503 U.S. 258, 278 (1992) (O'Connor, S., concurring) (citing 18 U.S.C. § 1961(1)).

While Bey's claim sounds in fraud, it is entirely unclear from the TAC which provision of § 1961 Bey is attempting to invoke or how each of the Defendants' conduct purportedly falls under it. On this ground alone, Bey's RICO claim fails to sufficiently plead predicate acts with the particularity necessary to satisfy RICO's heightened pleading standard.

But even if the Court could decipher which RICO subsection the alleged predicate acts fall under, Bey's RICO claim also fails to allege a sufficient quantity of predicate acts and fails to show that the acts are of the kind amounting to "criminal conduct of a *continuing* nature." *Jackson*, 372 F.3d at 1264 (emphasis in original). The TAC states "[t]he predicate acts include (1) Wingfield referring Plaintiffs to Pierce; (2) Pierce feeding Plaintiffs' private business information to Wingfield; (3) Wingfield feeding that information to Potter; (4) Wingfield illegally opening Plaintiffs' bid; (5) Wingfield providing the bid information to Potter; (6) the City deciding to change course and not fire Wingfield for rigging the bid [*sic*]; and (7) instead the City paid her a six-figure settlement and restored her employment." (Doc. 95 at 11, ¶ 48.) Assuming these acts fall within the RICO statute, at best, they

7

constitute one alleged fraud (one predicate act), *i.e.*, rigging the City's bid process to Potter's favor.

Further, "[t]he continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Jackson*, 372. F.3d at 1265 (cleaned up).

Continuity is both a closed- and open-ended time concept. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989). "[T]he *substantial* period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1255 (holding that district court correctly found that nine months was not an adequately substantial period of time); *see also Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992) (holding that six months was too short to "qualify as a pattern of racketeering activity").

Bey concedes that the alleged predicate acts all occurred within a period of six months, precluding a finding of close-ended continuity. Moreover, Bey relies on "a single scheme with a discrete goal[,]" which similarly precludes a finding of closed-ended continuity. *Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015); *see also Jackson*, 372 F.3d at 1267; *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990). Thus, Bey necessarily must rely on an open-ended theory for a pattern of racketeering.

Open-ended continuity is established when "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or "the predicate acts or offenses are part of an ongoing entity's regular way of doing

8

business." *Jackson*, 372 F. 3d at 1265 (quoting *H.J. Inc.*, 492 U.S. at 242); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994) ("In assessing whether a threat of continued racketeering activity exists, we have made clear that schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity.").

Bey contends that by reinstating Wingfield to her position with the City of Dothan, the City has placed Winfield in a position to continue rigging bids in the future and to "continue with her cronyism." (Doc. 95, at 11, ¶ 49.) But as the Defendants point out, and Bey states in the TAC, "the [C]ity of Dothan took the feeding program and gave it back to Dothan City [S]chools." (Doc. 95, at 5, ¶ 25.) This assertion shows that there is no continuity or threat of repetition in the alleged bid rigging scheme.

In sum, Bey has not plausibly alleged a pattern of racketeering activity or predicate acts.

### B. Federal Antitrust Claims

Count IV broadly alleges that the Defendants, by colluding to rig the bidding process and subsequently covering up that conduct, violated the Sherman Antitrust Act and the Clayton Antitrust Act. The Defendants argue that Count IV fails to state a claim under either act, specifically that Bey has not sufficiently alleged monopolization, anti-competitive harm, or a *per se* violation of the Sherman Antitrust Act. The Court agrees.

The Sherman Antitrust Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1. Further, "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with

any person or persons, to monopolize any part of the trade or commerce among the several States" violates the Act. *Id.* at § 2.

Private parties can enforce Section 1 of the Sherman Act through Sections 4 and 16 of the Clayton Act and recover damages and injunctive relief under those respective provisions.[1] *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1555 n.4 (11th Cir. 1992); *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1444 n.10, 1448–49, 1452 (11th Cir. 1991); *see also Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1298 (11th Cir. 2010). To do so, a plaintiff "must prove (1) [a] violation of the antitrust laws, (2) [a] cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage." *McGuire Oil Co.*, 958 F.2d at 1557–58.

Under either Section 1 or Section 2 of the Sherman Act, a plaintiff must show that there was a harm to competition in the aggregate, not simply to one competitor. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004); *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (stating that "antitrust laws . . . were enacted for 'the protection of competition not competitors'") (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962))); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 343 (1990) (emphasis in original) ("The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior.").

There are two categories of Sherman Act violations: *per se* violations and rule of reason violations. *See Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1076 (11th Cir. 2016). To determine whether an antitrust claim should be analyzed as a *per se*

---

[1] The Clayton Act authorizes private parties to sue for triple damages when they have been harmed by conduct that violates either the Sherman or Clayton Act and to obtain a court order prohibiting the anticompetitive practice in the future.

violation or a rule of reason violation, a court must decide whether the alleged violation is one that has a "pernicious effect on competition and lack[s] any redeeming virtue[,]" making it "illegal without elaborate inquiry as to the precise harm . . . caused or the business excuse for [its] use." *Graphic Prods. Distribs., Inc. v. ITEK Corp.*, 717 F.2d 1560, 1566 n.7 (11th Cir. 1983) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)). "Except where courts have already carved out certain categories of offenses as proscribed *per se*, 'there is an automatic presumption in favor of the rule of reason standard.'" *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 342 (6th Cir. 2006) (quoting *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005)).

Courts, when analyzing whether a restraint is a *per se* violation, repeatedly draw a distinction between "horizontal restraints that involve direct competitors at a given level of the market, and vertical restraints that typically involve entities that are upstream or downstream of one another." 440 F.3d at 344 (listing categories of horizontal *per se* violations as price-fixing, bid-rigging, market allocation, group boycotts, and certain tying arrangements). However, "the Supreme Court has reversed most of its earlier *per se* prohibitions of vertical restraints." *Id.* (analyzing under the rule of reason vertical nonprice restraints, distribution restraints, maximum price fixing, and two-party boycotts).

Similar to the nature of the dispute here, in *Expert Masonry*, the Sixth Circuit found that an alleged conspiracy to rig a government construction bid, which was vertical in nature, did not amount to a *per se* violation of antitrust law and had to be reviewed under the rule of reason. *Id.* at 345; *see also Sitkin Smelting & Refin. Co. v. FMC Corp.,* 575 F.2d 440, 445–48 (3d Cir. 1978) (finding that "sham-bidding" substantially identical to the one alleged here did not constitute a per se violation of antitrust laws and required analysis under the rule of reason).

11

Bey's alleged scheme is one between the City of Dothan, who was a potential downstream purchaser of Bey's services, and Potter, who was an upstream seller vying for a government contract to provide services. Accordingly, Bey alleges a vertical restraint, and the rule of reason applies.

The rule of reason requires Bey to prove "(1) [the] anticompetitive effect of the defendant's conduct on the relevant market; and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1071 (footnote omitted) (quoting *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir 1996)). To show anticompetitive effect, "[Bey] may establish either (1) that the restraint had an 'actual detrimental effect' on competition, or (2) that the restraint had the *potential* for genuine anticompetitive effects and that the conspirators had market power in the relevant market." *Procaps S.A.*, 845 F.3d at 1085 (emphasis added) (citing *Levine*, 72 F.3d at 1551). Further, "a plaintiff may not meet its burden of showing actual anticompetitive effects with mere conclusory assertions; rather . . . a plaintiff [must] point to specific facts demonstrating harm to competition." *Id.* at 1084 (citing *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1072–73).

Here, the TAC is completely devoid of allegations that competition, in general, was harmed. Rather, it makes conclusory allegations specific to the harm that Bey suffered herself. Further, the TAC makes no allegation at all with respect to the market power of the Defendants, precluding a *potential* theory. Accordingly, the TAC fails to state an antitrust claim upon which relief may be granted.

## C. Fourteenth Amendment Claims

The TAC vaguely references the Fourteenth Amendment within the bodies of the counts labeled as fraud-deceit, fraud-suppression, conspiracy-RICO, and collusion-violation of antitrust laws. Within each of these counts, Bey states "Defendants' conduct, which runs afoul of the State of Alabama's Competitive Bid

Law . . . violates the Sherman Antitrust Act, and violates Plaintiffs' rights under the Fourteenth Amendment (including but not limited to the Due Process and Privileges and Immunities clauses)." (Doc. 95 at 7–13, ¶¶ 34, 42, 52, and 57.) Bey says nothing else as it concerns the Fourteenth Amendment. The Defendants move to dismiss this claim, to the extent Bey is trying to make one, for failure to state a claim.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Categorial labels are not enough. *See Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Further, the Eleventh Circuit does not tolerate "shotgun pleadings[,]" which fail to "adequately put [defendants] on notice of the specific claims against them and the factual allegations that support those claims." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015). The four categories of shotgun pleadings are; (1) "complaints containing multiple counts where each count adopts the allegations of all preceding counts[;]" (2) those that are "replete with conclusory vague, and immaterial facts not obviously connected to any particular cause of action[;]" (3) those that do not "separate[e] into a different count each cause of action or claim for relief[;]" and (4) those that assert multiple claims against multiple defendants but fail to specify which defendant is responsible for each act, "or which of the defendants the claim is brought against." *Id.* at 1321–23.

Bey's pleading of a Fourteenth Amendment violation falls woefully short. Bey does not state a claim in any fashion with any degree of specificity, and to the extent she references the Fourteenth Amendment, she does so in a shotgun fashion when she embeds it within other counts broadly directed to the conduct of all of the Defendants. Embedded labels about constitutional violations does not pass muster. As such, the claim is due to be dismissed.

13

**E. State Law Claims**

Having determined that the federal claims are due to be dismissed, the final matter for resolution is Bey's state law claims.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). If, after examining the factors listed in § 1367(c), the district court decides that it has the discretion to decline to exercise jurisdiction, it should consider the traditional rationales for pendent jurisdiction in deciding whether or not to exercise that jurisdiction, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

The Court has dismissed all claims over which it has original jurisdiction and concludes that comity and judicial economy are both served by declining to needlessly decide the remaining matters of state law. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), Counts I (Fraud/Deceit), II (Fraud/Suppression), and V (Intentional Interference with Business Relations) of the TAC will be dismissed without prejudice.

**CONCLUSION**

Accordingly, it is **ORDERED** as follows:

(1) The *Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction* (doc. 101) filed by Defendants Allison Hall, Freddie L. White II, and the City of Dothan is **GRANTED** to the extent that these Defendants seek dismissal of the federal claims (Racketeer Influenced and Corrupt Organization Act, the Sherman Antitrust Act, the Clayton Act, and the Fourteenth Amendment);

(2) The *Motion to Dismiss* (doc. 103) filed by Defendant Stephanie Wingfield is **GRANTED**[2] to the extent that this Defendant seeks dismissal of the federal claims (Racketeer Influenced and Corrupt Organization Act, the Sherman Antitrust Act, the Clayton Act, and the Fourteenth Amendment);

(3) Defendant LaPortia Pierce did not file a renewed motion to dismiss or any responsive pleading to the Third Amended Complaint, but as to her, the federal claims (Racketeer Influenced and Corrupt Organization Act, the Sherman Antitrust Act, the Clayton Act, and the Fourteenth Amendment) are also **DISMISSED**[3] for the same reasons as the other Defendants;

(4) Because the Court declines to retain supplemental jurisdiction over the state law claims, those claims (fraud-deceit, fraud-suppression, improper collusion under Alabama's antitrust laws, and intentional interference with business relations) are **DISMISSED** without prejudice;

---

[2] Bey has amended the original complaint twice already. As such, the Court declines to give Bey yet another opportunity to amend her federal claims. *See Forman v. Davis*, 371 U.S. 178, 182 (holding that a court need not allow amendment when there has been "repeated failure to cure deficiencies by amendments previously allowed").

[3] *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1069–70 (11th Cir. 2007) (court did not err in dismissing on failure to state a claim grounds, *sua sponte*, where the defendant had not yet filed an answer, and the plaintiff had ample time and opportunity to correct their complaint).

(5) The Clerk of Court is **DIRECTED** to close this case.  No costs are taxed.

**DONE** and **ORDERED** on this the 6th day of October 2025.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE